An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1059

Filed 1 July 2026

Wake County, No. 25CV021587-910

G1.34 HOLDINGS, LLC, Plaintiff,

v.

CHAPMAN GROUP INC. OF SC., Defendant.

Appeal by defendant from order entered 2 September 2025 by Judge C. Douglas Green in the Superior Court of Wake County. Heard in the Court of Appeals 23 April 2026.

> *Parry Law, PLLC, by Jonah A. Garson, and Carl M. Newman, for plaintiff-appellee.*

> *Michael Best & Friedrich LLP, by Michael G. Schietzelt and Justin G. May, for defendant-appellant.*

DILLON, Chief Judge.

Plaintiff G1.34 Holdings, LLC filed a complaint against Defendant Chapman Group Inc. of SC arising from a soured business relationship concerning the development of auto-reconditioning software. Plaintiff is also a defendant in litigation before the North Carolina Business Court concerning two other companies

related to Defendant. In this case, Plaintiff asserts claims of unfair or deceptive trade practices and tortious interference with contract. Defendant filed a Motion to Stay Litigation which the trial court denied. Defendant timely appeals.

## I.    Background

Plaintiff is a North Carolina limited liability company with its registered office in Wake County. Defendant is a South Carolina corporation with its registered office and principal place of business in Wake County. Defendant's members are Jeff and Stefanie Chapman. Defendant markets third-party software to auto dealerships to assist the dealerships with the auto-reconditioning process, the process of repairing and restoring used cars for commercial sale.

Prior to 2019, LaborGate, LLC, licensed its auto-reconditioning software to Defendant for Defendant to run its marketing business. However, in 2019, Mr. Chapman formed Recon Partners, LLC ("RP") with Plaintiff for the purpose of developing and commercializing proprietary auto-reconditioning software ("competing software"). RP is technically owned by Auto ProVisions, LLC ("AP") (with Mr. Chapman as the principal) and by Plaintiff. Plaintiff provided the financing and development of the competing software for RP.

Plaintiff agreed to RP granting Defendant a license for the competing software. Defendant's license agreement is within RP's operating agreement, to which Defendant is a signatory.

Plaintiff's and Defendant's relationship became strained as the competing

software developed to "minimal viable product" status. After failed negotiation attempts between AP, RP, and Plaintiff under a non-mandatory separation process, AP and RP sued Plaintiff in Wake County Superior Court to force a sale of Plaintiff's interest in RP (the "First Lawsuit") citing a breach of contract. The trial court later designated the First Lawsuit as a complex business matter to be tried in the Business Court. As the case progressed, Plaintiff filed a motion to amend its complaint to add Defendant as a counterclaim defendant, asserting claims of unfair or deceptive trade practices ("UDTP") and tortious interference with contract. In May 2025, the Business Court denied Plaintiff's motion to amend citing undue delay.

As a result, three weeks later, in June 2025, Plaintiff filed this present action (the "Second Lawsuit") against Defendant in Wake County Superior Court. In this Second Lawsuit, Plaintiff asserted two claims: (1) UDTP; and (2) tortious interference with contract. Plaintiff also requested the Second Lawsuit be designated as a complex business matter to be tried in the Business Court. Plaintiff argued this Second Lawsuit involved substantially similar legal issues and factual allegations as those in the First Lawsuit and that the issues resolved in the First Lawsuit could have a preclusive effect on this Second Lawsuit. The trial court denied Plaintiff's request for designation, and the case proceeded on the regular civil docket.

A month later, in July 2025, Defendant filed a Motion to Stay the proceedings in this Second Lawsuit pending resolution of the First Lawsuit. Defendant argued the two lawsuits involved overlapping factual issues and proceeding simultaneously

could result in inconsistent outcomes and unnecessary expenditure of judicial resources. Plaintiff objected to Defendant's Motion, arguing the cases involved different parties, claims, and issues and that a stay was not warranted.

By order entered 2 September 2025, the trial court denied Defendant's Motion. The trial court concluded the actions involved different claims and parties and that a stay was not warranted. Defendant timely appeals from the trial court's order.

## II. Analysis

As a threshold matter, we consider whether we have jurisdiction over Defendant's appeal. North Carolina does not recognize an immediate right of appeal from a denial of a motion to stay. *Howerton v. Grace Hosp., Inc.*, 124 N.C. App. 199, 201–02 (1996). The "appellant bears the burden of demonstrating that the interlocutory order appealed from 'deprives the appellant of a substantial right . . . .' " *Neusoft Med. v. Neuisys, LLC*, 242 N.C. App. 102, 108 (2015). An interlocutory order is appealable when it affects a substantial right. N.C.G.S. §§ 1-277(a), 7A-27(b)(3)(a); *see Green v. Duke Power Co.*, 305 N.C. 603, 608 (1982).

Our Supreme Court has interpreted a party to have a substantial right when the case involves avoiding two trials on the same legal issues giving rise to the possibility of inconsistent verdicts. *Id.* at 608. For there to be an inconsistent verdict giving rise to a substantial right, this requires showing "a risk that different fact-finders would reach irreconcilable results when examining the same factual issues a

second time." *Denney v. Wardson Constr., LLC*, 264 N.C. App. 15, 19 (2019) (citation omitted).

In *Shearon Farms Townhome Owners Ass'n II, Inc. v. Shearon Farms Dev., LLC*, Judge Dietz, now Justice Dietz, expanded on the meaning of the inconsistent verdicts doctrine and how it should be applied. 272 N.C. App. 643. There, this Court categorized the doctrine as a "subset" of the substantial rights doctrine, and one that is "often misunderstood." *Id.* at 646. Further, we elaborated on *Green's* "same issues" language stating the "same factual issues . . . may be relevant to two separate claims for two different reasons" and there is no substantial right unless "the same fact is determinative of the same issue in multiple claims . . . ." *Id.* at 647 (citing *Hamilton v. Mortg. Info.*, 212 N.C. App. 73, 83–84 (2011). Thus, an inconsistent verdict may only arise when the same factual issue is determinative in multiple claims potentially risking two juries rendering "incompatible outcomes." *Shearon Farms Townhome*, 272 N.C. App. at 647 (citation omitted).

This Court in *Howerton* applied *Green's* holding and held there was no risk of an inconsistent verdict because the pending federal action and pending state action did not have "complete identity as to . . . causes of action . . . ." 124 N.C. App. at 202 (citation omitted). There, we affirmed the trial court's denial of the defendant's motion to stay because the federal action involved claims addressing violations of the Sherman Antitrust Act and Due Process while the state court action involved various state claims previously voluntarily dismissed in the federal action. *Id.*

Defendant cites *Creek Pointe Homeowner's Ass'n, Inc. v. Happ*, 146 N.C. App. 159, 162 (2001) and *Gardner v. Richmond Cnty.*, 386 N.C. 594, 594 (2024) (per curiam) for the proposition that allowing two separate lawsuits to proceed on the same facts risks inconsistent outcomes. Both of those cases, however, deal with multiple plaintiffs arguing inconsistent verdicts in one lawsuit, while *Howerton* is closer to the instant case as it deals with the same defendant arguing inconsistent outcomes as between two lawsuits in two separate courts. *See* 124 N.C. App. at 202.

Defendant's inconsistent verdicts argument relies on the assumption it would be "irreconcilable" for the Business Court to determine AP and RP are not liable for breach of contract but then a jury in this Second Lawsuit to determine Defendant is liable for tortious interference with contract based on that same contract. Then, "any wrongdoing premised on interference or conspiracy—such as [Plaintiff's UDTP claim]—would collapse."

Defendant does not risk inconsistent verdicts because, like *Howerton*, there is a lack of complete identity as to the parties *and* causes of action. Defendant is not a party to the First Lawsuit and UDTP and tortious interference with contract are not claims in the First Lawsuit.

Similarly, under our explanation of the inconsistent verdict doctrine in *Shearon Farms Townhome*, Defendant does not risk an incompatible outcome under its hypothetical. Defendant's hypothetical relies on the assumption that no liability on a breach of contract claim is incompatible or irreconcilable with liability on a

tortious interference with contract claim. This assumption requires us to read the elements of tortious interference with contract as requiring a breach of contract, which is not the case. *See Intersal, Inc. v. Hamilton*, 373 N.C. 89, 100 (2019) (listing the elements of a tortious interference with contract claim which does not require a breach of contract) (citations omitted).

Thus, based on *Howerton* or this Court's explanation of the inconsistent verdict doctrine in *Shearon Farms Townhome*, Defendant cannot show it will lose a substantial right based on an inconsistent verdict between the two lawsuits.

III.    Conclusion

For the reasons stated herein, Defendant failed to show the interlocutory order denying his Motion to Stay is immediately appealable. We, thus, dismiss this appeal for lack of subject matter jurisdiction.

DISMISSED.

Judges STROUD and MURRY concur.

Report per Rule 30(e).